**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Crim. No. 20-59 (ECT/BRT) |
| Plaintiff, | |
| v. | **REPORT AND** |
| | **RECOMMENDATION** |
| Gene Paul Schave, | |
| Defendant. | |

Emily Polachek, Esq., United States Attorney's Office, counsel for Plaintiff.

Douglas Olson, Esq., Office of the Federal Defender, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

Defendant Gene Paul Schave has been indicted for possession of child pornography. Prior to that indictment, officers executed a search warrant for the home where Defendant Schave was living, seizing several computer devices that revealed images and videos of suspected child pornography. Defendant now moves to suppress the evidence seized as a result of the search of the home, claiming that the warrant to search the home was not sufficiently particularized or based on probable cause. (Doc. No. 28, Def.'s Mot. to Suppress Evidence Obtained as a Result of Search and Seizure; *see generally* Doc. No. 40, Def.'s Post-Hrg. Mem. in Supp. of Mot. to Suppress Evid. ("Def.'s Mem.").) In addition, Defendant was questioned by an officer during the execution of the search warrant. (*See* Doc. No. 36, Ex. 2.) Defendant requests that all statements made after Defendant invoked his right to counsel be suppressed. (Doc.

No. 27, Def.'s Mot. to Suppress Statements, Admissions, and Answers; *see also* Doc. No. 40, Def.'s Mem. 14–15.) For the reasons stated below, this Court recommends that Defendant's motion to suppress statements be granted and Defendant's motion to suppress evidence be denied.

## BACKGROUND

On September 30, 2019, Minneapolis Police Officer Dale Hanson applied for and obtained a warrant to search a Como Avenue residence in Minneapolis for, among other things, computers, tablets, and cellular phones that may be used to connect to the internet, visually display images, display or access websites, chat sites, and email. (Doc. No. 36, Gov. Ex. 1.) In his supporting affidavit, Officer Hanson indicated that between April 9 and September 10, 2019, the Minnesota Bureau of Criminal Apprehension Internet Crimes against Children Unit received seven cybertip reports from Microsoft's Bing search engine, indicating that someone had used the Bing Image Search service to upload a total of eight images containing suspected child pornography. (*Id.* at 236.)[1] Officer Hanson learned from Microsoft that the IP address for each of the cybertips was assigned to Comcast Communications. (*Id.* at 237.) In response to a subpoena, Comcast informed Officer Hanson that the subscriber for that account was an individual named Paul Sutton, who resided at the Como Avenue address in Minneapolis. (*Id.*)

Officer Hanson states in his affidavit that he "knows from training and experience that digital software or hardware exists that allows persons to share digital access over

---

[1]   This Court refers to the Bates numbers stamped at the bottom of the pages associated with Government Exhibit 1.

wireless networks allowing multiple persons to appear on the Internet from the same IP address within the same residence." (*Id.* at 233.) Officer Hanson also explained in his affidavit the following:

- The owner of the home at the Como Avenue address is Lawrence Paradise;

- A search of a database revealed that multiple males were associated with the Como Avenue address, and it appeared that "it might be a room rental type home";

- A photo of the address showed a sign in the front of the house offering "a room for rent";

- Further research revealed that two sex offenders lived at the Como Avenue address: Paul Warren Sutton and Gene Paul Schave;

- With respect to Mr. Schave, Officer Hanson stated that he "is a level 3 sex offender with a previous conviction for child pornography possession" and that he "is currently on probation in Hennepin county";

- Mr. Schave, according to his probation officer, has "one probation monitored cell phone and has not reported having a computer."

(*Id.* at 240–41.) In addition, Officer Hanson stated that he "has conducted or assisted with search warrants on residences with room rental situations such as this one," and that "[i]t is common for one resident to pay for internet and charge the other residents for use of the internet." (*Id.* at 241.)

A state judge granted the warrant application, finding probable cause to believe that the described property and things were at the Como Avenue address, authorizing the search of the "premises," "including garages, outbuildings, vehicles on the property, and curtilage." (*Id.* at 243, 246.) Officer Hanson, along with other officers, executed the warrant on October 3, 2019.

Before searching any of the rooms at the Como Avenue address, Officer Hanson spoke with Mr. Schave and learned that he had his own bedroom in the home. Officer Hanson's conversation with Mr. Schave was recorded on Officer's Hanson's body-worn camera. (Doc. No. 36, Gov. Ex. 2.) Officer Hanson told Mr. Schave that he was not free to leave and read Mr. Schave his *Miranda* rights. (*Id.*) Mr. Schave stated that he understood those rights. (*Id.*) Officer Hanson told Mr. Schave that he knew he was on probation and asked whether Mr. Schave had other devices in his room that were unknown to his probation officer. (*Id.*) Mr. Schave stated that there were tablets in his bedroom and a laptop and a desktop computer in a closet outside of his room. (*Id.*) After a few more questions by Officer Hanson, Mr. Schave made a request to invoke his right to be silent and to speak with an attorney. (*Id.*)

Law enforcement then executed the search and recovered all the computer devices that Mr. Schave had stated that he had. (Doc. No. 36, Gov. Ex. 1 at 230 (listing items 1 through 6 as items found in Room C (Mr. Schave's room) or in the closet outside Room C).) A forensic examination of the devices revealed images and videos of suspected child pornography, which are the basis for the indictment filed against Defendant in this case. (*See* Doc. No. 1, Indictment.) Defendant has moved to suppress the evidence seized from his bedroom and the closet outside his bedroom during the October 3, 2019 search, and has moved to suppress any statements he made to Officer Hanson after he invoked his right to speak with counsel.

## ANALYSIS

### I. Defendant's Motion to Suppress Statements

Prior to searching Mr. Schave's bedroom pursuant to the search warrant at issue, Officer Hanson told Mr. Schave he was not free to leave and read him his *Miranda* rights. After answering a few questions, Mr. Schave invoked his right to counsel. (Doc. No. 36, Gov. Ex. 2 at 4:00 minutes.) Defendant Schave moves to suppress all statements made after he invoked his right to counsel. (Defendant Schave does not move to suppress any of the statements made before he invoked his right to counsel.) The Government does not oppose the motion to the extent Defendant requests to suppress post-invocation-of-rights statements. This Court agrees that any statements made after the invocation of Defendant's right to counsel should be suppressed. Therefore, this Court recommends that Defendant's statements made after he requested to speak to an attorney (after the 4:00 minute mark on the video), be suppressed and the motion, as requested, be granted.

### II. Defendant's Motion to Suppress Evidence – Search Warrant

Defendant argues that the September 30, 2019 search warrant for the search of the home at the Como Avenue address is invalid because it "fails to meet the fundamental requirements of the Fourth Amendment that a warrant be sufficiently particularized and based on probable cause." (Doc. No. 40, Def.'s Post-Hearing Mem. in Supp. of Mot. to Suppress Evid. ("Def.'s Mem.") 3.) Specifically, Defendant argues that the warrant only outlines information that the Comcast IP subscription with evidence of child pornography uploads was linked to Paul Sutton. Therefore, Defendant asserts that, since the address was a rental room type house, the warrant "provides no information whatsoever that

5

would permit a probable cause determination that Mr. Schave, one of the described renters, was responsible for uploading child pornography using the Sutton IP address, or that such material was likely to [be] found on his devices." (Def.'s Mem. 9.) Defendant also argues that because the home at the Como Avenue address was a room-rental type house, and because Defendant's bedroom and personal media devices were not described with particularity in the warrant, the warrant should be found invalid for lack of particularity and for being overbroad. In addition, Defendant argues that the good-faith exception does not apply because the "deficiency in the warrant's probable cause/nexus presentation and the lack of particularity in describing the place to be searched render official reliance on the warrant objectively unreasonable and demonstrate that *Leon* is not applicable." (*Id.* at 12.)

The Government disagrees and asserts that the warrant is sufficiently particular, is supported by probable cause, and gave the issuing judge a sufficient basis to conclude that someone at the Como Avenue residence illegally downloaded child pornography, and that evidence of that offense would be present inside the home. (Doc. No. 45, Gov'ts Post-Hrg Resp. ("Gov'ts Resp.") 4–7.) It further argues that, even if probable cause were lacking, the evidence would still be admissible under the good-faith exception to the exclusionary rule because officers reasonably relied on the search warrant. (*Id.* at 8.)

To comport with the Fourth Amendment, a search warrant must be based on a showing of probable cause, which exists when the supporting affidavit "sets forth sufficient facts to establish a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Darr*, 661 F.3d 375, 380 (8th Cir. 2011)

6

(quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The task of the issuing judge is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information," such a fair probability exists. *Gates*, 462 U.S. at 238. In making that determination, a judge must "consider all of the facts for their cumulative meaning," not "each piece of information independently." *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002).

A reviewing court's task is not to assess the sufficiency of a warrant affidavit *de novo*, but "simply to ensure that the [issuing judge] had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 236, 238–39 (quotation and alterations omitted). That standard affords "great deference" to the issuing judge's probable-cause determination and demands interpreting the supporting affidavit with "commonsense" and not in a "grudging," "hypertechnical" fashion. *Id.* at 236. In "doubtful or marginal case[s]" where "[r]easonable minds . . . may differ on the question of whether a particular affidavit establishes probable cause," a reviewing court must defer to the issuing judge's conclusions. *United States v. Leon*, 468 U.S. 897, 914 (1984).

This Court concludes that there was a substantial basis to conclude that evidence of criminal activity would be found at the Como Avenue address. The affidavit included information that eight images of child pornography had been uploaded using the Bing website, and that the IP address used was linked to the subscriber, Paul Sutton, who lived at the Como Avenue address. The affidavit also stated that both Paul Warren Sutton and Gene Paul Schave, both sex offenders, lived at that address. And Officer Hanson

7

explained in the affidavit that "digital software or hardware exists that allows persons to share digital access over wired or wireless networks allowing multiple persons to appear on the Internet from the same IP address within the same residence" and that "[i]t is common [in room rental situations] for one resident to pay for internet and charge the other residents for use of the internet." (Gov't Ex. 1 at 233, 241.) Officer Hanson also stated that:

> Collectors of child pornography often maintain their collections, in a digital or electronic format, in a safe, secure, and private environment, such as a computer and/or surrounding area. Collectors highly value their collections and often maintain the collections for several years. Collectors frequently keep their collection close by, usually at their residence, to enable them to easily view the collection.

(*Id.* at 235.)[2] Based on this information, there was probable cause to believe that physical evidence of violations of the child pornography laws would be located at the Como Avenue address. *See United States v.* Reed, No. 1:17-CR-314-MHC-LTW, 2018 WL 6611580, at * 4 (N.D. Ga. Nov. 13, 2018) (finding probable cause existed to search the entire residence, including Defendant's bedroom, when the IP address linked to the downloading of pornography was being used by Defendant's roommate); *United States v. Huntoon*, No. CR-16-00046-001-TUC-DCB (DTF), 2018 WL 1755788, at *5 (D. Ariz. Apr. 12, 2018) (finding probable cause to search an address, including all the dwelling structures on the property (which was where defendant resided), when suspected child

---

[2]    This Court notes that Officer Hanson has been a Minneapolis police officer since 1997, a Task Force Officer with the Minnesota FBA Child Exploitation Task Force since 2011, a member of the Minnesota Internet Crimes Against Children Task Force since 2004, and "has been extensively trained in the investigation of the internet exploitation of children." (Gov't Ex. 1 at 233.)

pornography was found on a specific IP address associated with the property, even though defendant was not the owner of the IP address).

With that said, the Court must still consider whether the particularity of the search warrant was sufficient as to the place to search, in light of the fact that at the time the search warrant affidavit was submitted to the court the officers knew that multiple males were "associated" with the Como Avenue address and that "it appeared that it might be a room rental type home." (Gov't Ex. 1 at 240.)

"A search warrant must contain a description of the place to be searched in order to comply with the fourth amendment's particularity requirement." *United States v. Curry*, 911 F.2d 72, 76 (8th Cir. 1990). "There must be a nexus between the contraband and the place to be searched before a warrant may properly issue, but judges are allowed to use common sense and draw reasonable inferences from the totality of the circumstances when deciding whether to issue a warrant." *United States v. Houston*, 754 F. Supp. 2d 1059, 1072–73 (D.S.D. 2010) (citing *United States v. Alexander*, 574 F.3d 484, 489 (8th Cir. 2009)). The warrant need only be sufficiently definite to enable the searching officers "to locate and identify the premises with reasonable effort" and identify the property to be seized. *United States v. Thomas*, 263 F.3d 805, 807 (8th Cir. 2001) (quotations omitted); *see United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007). "The particularity requirement is a standard of practical accuracy rather than a hypertechnical one." *Id.* (citations omitted, punctuation altered). Therefore, reviewing courts do not resolve issues concerning particularity "in a vacuum." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011). Rather, the court will base its determination

"on such factors as the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *Id.* In other words, the degree of particularity required is flexible and may vary depending on the circumstances and the type of items involved. *United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999).

"Multiple circuit courts have held that to satisfy the particularity requirement when a search involves a building with multiple, separate residency units, the warrant must specify the precise unit that is the subject of the search." *United States v. Perez*, 484 F.3d 735, 741 (5th Cir. 2007) (citing *United States v. White*, 416 F.3d 634, 637 (7th Cir. 2005)); *cf. United States v. Gill*, 623 F.2d 540, 544 (8th Cir. 1980) ("Federal courts long have held that police officers, before they constitutionally may search a separate residential unit within an apartment building, must have probable cause to do so that is specifically related to that unit.") (quotations omitted). However, "[t]he warrant of a multi-unit structure will be valid where (1) there is probable cause to search each unit;[] (2) the targets of the investigation have access to the entire structure; or (3) the officers reasonably believed that the premises had only a single unit." *Perez*, 484 F.3d at 741 (citing cases). "There is also authority for the proposition that a warrant to search a multi-unit dwelling is valid if it specifies the name of the occupant of the apartment against which it is directed, despite the absence of any physical description of the particular apartment." *Id.* at n.5 (citing *United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975)).

Here, as explained above, the police officers had probable cause to search each "unit."[3] Even though "it *appear[ed]* that it *might* be a room rental type home" there was nothing to indicate that the targets of the investigation—Paul Warren Sutton and Gene Paul Schave, who lived at the Como Avenue address—did not have access to the entire home. (Doc. No. 36, Gov. Ex. 1 at 240 (emphasis added)); *see United States v. Axelrod*, No. EDQ-10-0279, 2011 WL 1740542, at *3–5 (D. Md. May 3, 2011) (stating the warrant authorizing a search of the entire premises at the address was sufficiently particular and reasonable when the affidavit supporting the warrant "indicated that some computer user at the location associated with the suspect IP address had downloaded . . . child pornography," which "gave the issuing judge a substantial basis to conclude that child pornography would be located somewhere at [the address]"); *United States v. Tillotson*, No. 2:08-CR-33, 2008 WL 5140773, at * 7 (E.D. Tenn. Dec. 2, 2008) ("As far as the United States knew, *any* of the occupants of [the address]—or all of them, for that matter—could have used the computer to send and receive child pornography. Having no knowledge where the computer (or computers) and other electronic storage devices might be located, [the agent] reasonably was authorized to search throughout the entire house."). Therefore, this Court concludes that the warrant in this case was valid.

Next, although Defendant did not raise the argument that the execution of the warrant violated his constitutional rights in his motion (*see* Doc. No. 28), he does cite to

---

[3]   The body-worn camera video footage shows that the home at this address was a single-family home, that Defendant's bedroom was just off a common area living room in the home, was unlocked, and the door was open. (Gov't Ex. 2.)

11

some "execution" cases in his post-hearing brief.[4] For example, Defendant cites

*Maryland v. Garrison*, 480 U.S. 79 (1987).[5] In *Maryland v. Garrison*, as soon as the

police "discovered that there were two separate units on the third floor and therefore were

put on notice of the risk that they might be in a unit erroneously," they ceased to search

that unit. 480 U.S. 79, 87 (1987). The Supreme Court wrote that "[i]f the officers had

known, or should have known, that the third floor contained two apartments before they

entered the living quarters on the third floor, they would have been obligated to limit their

search to McWebb's apartment." *Id.* at 86. In this case, different from *Garrison*, the

officers were entering a house with common areas and *possible* rooms for rent, not a

building with multiple apartments, and the officers were aware that at least two men were

living in the home. When the officers arrived and learned that more men were also living

---

[4] The Government argues that because Defendant never raised an argument about execution of the search warrant in his motion or at the hearing, that if the Court were to entertain such an argument, the Court should allow the Government to re-open the hearing to allow for testimony about the execution of the warrant. However, this Court finds further testimony unnecessary, for the reasons stated below.

[5] Defendant also cites to *United States v. Shamaeizadeh*, 80 F.3d 1311 (6th Cir. 1996). There, the court stated that when the officers were notified that the residence was divided into two separate residences, "the officers should have restricted their execution of the warrant to the upper floor." (*Id.* at 1138–39.) This case does not help Defendant, because here, the officers had probable cause to search areas that Mr. Sutton and Mr. Schave had access to, which included Mr. Schave's bedroom and common areas in the home. (In addition, *Shamaeizadeh* involved a search related to federal drug law violations in 1996, which is very different from a search relating to present-day internet usage, which can involve the sharing of IP addresses within a residence.) The other cases that Defendant references relating to the execution of a warrant are similarly inapposite, because here, the warrant did identify Mr. Schave as a resident of the property, and there was probable cause to search his bedroom and areas where he had access to potentially store the items subject to the search.

in the home, the officers were allowed to search the areas used by Mr. Sutton and Mr. Schave. *Cf. Doe v. Olson*, 691 F. App'x 272, 274 (8th Cir. 2017) (concluding in a section 1983 action that "there was no clearly established law putting [the officers] on notice that a search of Doe's rented room would violate the Fourth Amendment under the circumstances"). Thus, even though the officers learned that more men lived in the home than they originally knew about, there was still a fair probability that the illegal transmissions were made within the home, and in particular, were made in areas of the home that either Mr. Sutton or Mr. Schave had access to. Furthermore, in addition to Defendant's name being specifically mentioned in the search warrant application as a sex offender on probation who was living at the Como Avenue address, the record evidence shows that before the search occurred, Defendant told Officer Hanson that he possessed items in his bedroom and in the closet just outside of this bedroom (specifically tablets, a laptop, and a computer) that not only violated his probation, but were items listed in the search warrant as things subject to the allowed search. (*See* Gov't Ex. 1 (first four minutes only).) Therefore, probable cause for the search still existed, and the execution of the warrant did not violate Defendant's constitutional rights. *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003) ("[T]he substance of all the definitions of probable cause is a reasonable ground for belief . . . .") (quotation omitted); *Texas v. Brown*, 460 U.S. 730, 742 (1983) (stating that probable cause "does not demand any showing that such a belief be correct or more likely true than false"); *United States v. Muhammad*, 604 F.3d 1022, 1028 (8th Cir. 2010) ("Probable cause does not require absolute certainty; it only requires

13

that the facts available to a reasonably cautious man would warrant a belief that certain items may be . . . useful as evidence of the crime.") (quotation omitted).

Moreover, even if Officer Hanson's affidavit failed to provide the issuing judge with a substantial basis for finding probable cause to search the Como Avenue home, the evidence seized from that search would still be admissible under the good-faith exception to the exclusionary rule. Under that exception, "the exclusionary rule does not apply when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid"; the error in such a case "rests with the issuing magistrate, not the police officer, and 'punish[ing] the errors of judges' is not the office of the exclusionary rule." *Davis v. United States*, 564 U.S. 229, 238–39 (2011) (quoting *Leon*, 468 U.S. at 916, 922). Defendant argues that the good-faith exception cannot apply in this case, asserting that an officer's reliance on the warrant was objectively unreasonable because of "the glaring deficiency in the warrant's probable cause/nexus presentation and the lack of particularity in describing the place to be searched[.]" (Def.'s Mem. 12.) For the reasons previously stated, the affidavit was not so lacking in indicia of probable cause as to preclude the officers who executed the search warrant from reasonably relying on the issuing judge's finding of probable cause, nor was the warrant lacking in particularity under the circumstances. Based on the information provided in the warrant affidavit, including the information provided through the cybertip reports and from Comcast Communications, there was a nexus between the criminal activity (the uploading of child pornography) and the residence. And even assuming that the search warrant was invalid, the police acted in "objectively reasonable reliance" on it. *See Davis*, 564 U.S. at 238; *see*

14

*also United States v. Ramirez*, No. 13-20866-CR, 2014 WL 835702, at *5 (S.D. Fla. Mar. 4, 2014) (concluding "the officers could reasonably rely on the validity of the search warrant as issued for the entirety of the Target Premises, regardless of whether Defendant happened to pay rent for his room to the other occupants of the house in which they all lived"). They did not flagrantly disregard Defendant's Fourth Amendment rights; instead, they secured a search warrant from a neutral magistrate based on an affidavit that was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 922. In addition, upon execution, the information provided by Mr. Schave when speaking to Officer Hanson—conceding that there were tablets, a laptop, and a computer (items which he was not supposed to have under his probation) in his bedroom and in the closet outside of his bedroom—provided additional support for the officers to search those specific areas of the home. Under the circumstances of this case, "the deterrence benefits of suppression [do not] outweigh its heavy costs" and, thus, "exclusion cannot 'pay its way.'" *Davis*, 564 U.S. at 237–38 (quoting *Leon*, 468 U.S. at 907 n.6).

      In sum, this Court finds that the warrant at issue in this case was sufficiently particular and supported by a sufficient showing of probable cause and, in any event, that any evidence seized pursuant to those warrants would otherwise fall within the good-faith exception to the exclusionary rule. This Court therefore recommends that Defendant's motion for suppression of evidence be denied.

# RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Statements, Admissions, and Answers (Doc. No. 27) be **GRANTED**;

2. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 28) be **DENIED**.


Date: August 26, 2020                     *s/ Becky R. Thorson*
                                          BECKY R. THORSON
                                          United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b), any party may file and serve specific written objections to this Report and Recommendation by **September 9, 2020**. A party may respond to those objections within **fourteen days** after service thereof. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 7 days from the date of its filing. If timely objections are filed, this Report will be considered under advisement from the earlier of: (1) 7 days after the objections are filed; or (2) from the date a timely response is filed.

**Transcript:** Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.